2001 OK CIV APP 143

OKLAHOMA HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION, INC., an Oklahoma corporation, John M. Lowder, Wilson Brown, Earl D. Smith, Mary Alice Nelson, Alfred Hill, Franklin E. Klutts, Leon Hixon, Peggy Nantz, Bill Parnell, Greg Thomas, Randy Oberlander, Dwain Keel, Dickie Brown, Pat Spencer, Bill Swalley, Thomas Pope, L.E. Lomax, Dale Ward, Ray Coffman, Gary Breshears, Eugene Jones, Garry S. McCain, Alphonse H. Carollo, Lawanna F. Gonzales, Lavonna Newberry, Melvin W. Carter, Gary Don Cox, Shad Seaton, Don Epps, Hale C. Lay, Richard Reed, Pam Sanders, Everett W. Terry, Dale Sneed, Kenneth J. Ward, Marhsa Schultz, John Gates, Bill Gregg, Ralph Mitchell, Jack Martin, Bill Haithcoat, Bob J. Harris, Anita Lousch, Richard Lousch, individuals, Plaintiffs/Appellants,

v.

Ron SHOTTS, Don Essary, Debbie Schauf, individuals, Tulsa County Public Facilities Authority d/b/a Fair Meadows at Tulsa, a public trust, Race Horses, Inc. d/b/a Blue Ribbon Downs, and Oklahoma Quarter Horse Racing Association, Inc., Oklahoma corporations, Defendants/Appellees.

No. 96,134.

Court of Civil Appeals of Oklahoma, Division No. 3.

July 20, 2001.

Certiorari Denied Oct. 23, 2001.

Modified Dec. 18, 2001.

Daniel J. Hoehner, Bullard & Hoehner, Larry C. Brawner, Brawner Law Firm, Oklahoma City, OK, for Plaintiffs/Appellants.

Michael T. Keester, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, for Defendants/Appellees, Ron Shotts and Tulsa County Public Facilities Authority.

Harry A. Woods, Jr., Crowe & Dunlevy, Oklahoma City, OK, for Defendant/Appellee, Race Horses, Inc.

Terry W. Tippens, Fellers, Snider, Blakenship, Bailey & Tippens, Oklahoma City, OK, for Defendants/Appellees, Oklahoma Quarter Horse Association, Inc., and Debbie Schauf.

Opinion by CAROL M. HANSEN, Chief Judge:

¶ 1 This case arises from a dispute regarding the alleged distribution of pari-mutuel handle to purses for horsemen participating in race meetings conducted by Defendant, the Tulsa County Public Facilities Authority, d/b/a Fair Meadows at Tulsa (Fair Meadows) from 1996 through 2000. Fair Meadows is a public trust licensed to conduct pari-mutuel "fair meet" horse racing in Tulsa. On April 12, 2000, Individual horsemen and a horsemen's representative group, Oklahoma Horsemen's Benevolent and Protective Association, Inc., (OHBPA), filed a class action lawsuit seeking a declaratory judgment and damages for civil conspiracy and unjust enrichment. The individual horsemen and OHBPA alleged that Fair Meadows, pursuant to simulcast agreements (Agreements) with Defendant, Race Horses, Inc., d/b/a Blue Ribbon Downs and Defendant, the Oklahoma Quarter Horse Racing Association, Inc., (OQHRA) was paying a portion of its operating expenses related to interstate simulcast wagering from funds which are statutorily designated to be distributed to the individual plaintiffs as purses. OHBPA and the individual plaintiffs alleged the money was being paid to Blue Ribbon Downs and was paid with the knowledge and consent of the OQHRA.[1] The trial court dismissed the declaratory judgment claim with prejudice

and dismissed the other causes of action without prejudice.

¶ 2 On September 18, 2000, only the individual horsemen (Plaintiffs) filed an amended petition alleging breach of contract against Fair Meadows;[2] breach of implied contract (constructive trust) against Fair Meadows, Defendant, Ron Shotts, Director of Racing at Fair Meadows, Blue Ribbon Downs, and Defendant, Don Essary, (Essary) general manager of Blue Ribbon Downs; conversion/tortious misappropriation, breach of implied covenant of good faith and fair dealing, and civil conspiracy, against Fair Meadows, Shotts, Blue Ribbon Downs, Essary, OQHRA and its executive director, Defendant Debbie Schauf; and interference with contractual relations against Blue Ribbon Downs, Essary, OQHRA and Schauf. The amended petition sought damages for the misappropriation of pari-mutuel handle from wagers accepted on intrastate and live races conducted at Fair Meadows, in addition to the original claim relating to the pari-mutuel handle generated from interstate simulcasting.

¶ 3 All Defendants filed separate motions to dismiss. Grounds for dismissal amongst Defendants included lack of subject matter jurisdiction, failure to exhaust administrative remedies, failure to state a claim for relief, no private cause of action under the Horse Racing Act, and failure to comply with the Oklahoma Governmental Tort Claims Act (Tort Claims Act).

1. On February 10, 2000, OHBPA sent a letter to the commission alleging that Fair Meadows was misappropriating funds collected on out-of-state simulcast races which are statutorily designated as horsemen's purse money. Included in the letter was the statutory authority for distribution of wagering proceeds, evidence and facts allegedly supporting the claim of misappropriation of funds, legal authority and evidence allegedly supporting a contention that the parties involved were guilty of embezzlement. The letter also requested relief, including a claim to return to the horsemen participating in races at Fair Meadows the misappropriated funds estimated to be "at least $900,000.00."

According to Fair Meadows, OHBPA filed a Petition for Writ of Mandamus (Case No. CJ–2000–1940–67) against Commission requesting the district court to order Commission to place the OHBPA letter on the Commission agenda. In that petition, OHBPA states that they "must first exhaust [their] administrative remedies" at

Commission. Although the Writ of Mandamus is not part of the record on appeal, Plaintiffs do not dispute this. The letter or "complaint" to Commission is still pending before Commission.

2. In their Amended Petition, Plaintiffs allege Fair Meadows made an offer of purse money to the class members who participated in the race meetings. The class members provided competitive horse racing by participating in the live races, entitling Plaintiffs to a percentage of the purse based upon Plaintiffs' finishing rank in a given race. Plaintiffs allege the offers of purse money were accepted by those class members who furnished the services and thereby formed a contract for payment of the purse money between Fair Meadows and the class members. The amount of purse money to be distributed by Fair Meadows as purses is mandated by statute as a percentage of the wagers collected by Fair Meadows on live, intrastate simulcast and out-of-state simulcast races as specified by Title 3A O.S.1991 §§ 205.6, 205.7, and 208.2.

¶ 4 After extensive briefing and protracted argument, the trial court granted all motions to dismiss and dismissed with prejudice all claims in Plaintiffs' amended petition. In its journal entry of judgment, the trial court found Plaintiffs had failed to exhaust their administrative remedies and that the claims must be dismissed for lack of subject matter jurisdiction. It further found the Tort Claims Act applies to tort claims brought against Fair Meadows and its employees and that Plaintiffs failed to comply with the requirements of the Tort Claims Act. As a result, the trial court dismissed all tort claims in the amended petition. Additionally, the trial court found that Plaintiffs asserted a claim for punitive damages against Fair Meadows and found "that the claim is deficient and fails to state a claim upon which relief can be granted, as punitive damages are not recoverable against [Fair Meadows] under the [Torts Claims Act]." Also, the trial court found the conversion claim failed to state a claim for relief because a conversion claim " . . . in Oklahoma requires a specific fund or an identifiable specific chattel upon which dominion is being exerted, and Plaintiffs' claims do not involve certain money or a specific fund which can be specifically described or identified as a specific chattel upon which dominion is being exerted, and Plaintiffs' claims do not involve certain money or a specific fund which can be specifically described or identified as a specific chattel." Finally, the trial court found the tortious breach of implied covenant of good faith and fair dealing and the civil conspiracy claims fail to state a claim upon which relief can be granted. Plaintiffs (individual horsemen) appeal.

¶ 5 In their petition in error, Plaintiffs contend the trial court erred in dismissing their claims due to lack of subject matter jurisdiction. They claim that Commission does not have the authority to award money damages; therefore, subject matter jurisdiction is properly before the district court. As authority, they cite *Fent v. Oklahoma Natural Gas Co.*, 1990 OK CIV APP 70, 804 P.2d 1146. In that case the plaintiffs filed a class action suit against ONG for damages resulting from the relocation of a gas line. The district court granted the defendant's motion to dismiss on grounds of no subject matter jurisdiction and failure to state a claim for relief. The Court of Civil Appeals reversed and held the Corporation Commission is not a court of general jurisdiction and does not have the power to enter a money judgment against a party. Plaintiffs contend Commission is no different than the Corporation Commission and has no authority to enter money damages. They submit that because no remedy for the relief sought in this action is available to them with Commission, exhaustion of administrative remedies is not a prerequisite to suit.

¶ 6 In *Fent,* the plaintiff sued for breach of contract and negligence to recover damages in relocating a gas line. In the present case, Plaintiffs allege there was a breach of contract for payment of purse money between themselves and Fair Meadow, formed by Fair Meadow's "offer" of purse money to class members who participated in live races and "acceptance" by those participating class members. Furthermore, as Plaintiffs also allege in their Amended Petition, the particular amount of purse money to be distributed as purses is mandated by statute as a percentage of the wagers collected by Fair Meadows on live, intrastate simulcast and out-of-state simulcast races as specified by 3A 1991 §§ 205.6, 205.7, and 208.2. To determine whether there has been any breach of any contract, first it must be determined if the particular amount of purse money distributed to Plaintiffs was in violation of these statutes. Whether the statutes contained in the Act have been violated is a determination which, initially, must be made by Commission. Title 3A 2001 Supp. § 204(A)(4) provides that the Commission shall "[a]djudicate controversies arising from the enforcement of the provisions of the Oklahoma Horse Racing Act and the rules of the Commission." All of the controversies in this case arise from alleged violation of provisions of the Act.

¶ 7 Because Plaintiffs' various causes of action arise from the threshold question of whether there has been a violation of the statutes dealing with distribution of purse money, and because Commission must first make this determination, it becomes unneces-

sary to address Plaintiffs other propositions of error. Moreover, as the Oklahoma Administrative Procedures Act is applicable to Commission, judicial review is available from any decision of Commission. *See.* 75 O.S.1991 § 250 et seq. The decision of the district court is AFFIRMED.

GARRETT, J., and BUETTNER, P.J., concur.